136 P.3d 350

STATE of Idaho, Plaintiff–Respondent,

v.

Scott AVERETT, Defendant–Appellant.

No. 30261.

Court of Appeals of Idaho.

March 3, 2006.

Review Denied May 22, 2006.

James W. Grow, Jr., Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

SCHWARTZMAN, Judge Pro Tem.

Scott Averett appeals from the judgment entered by the district court upon jury verdicts finding him guilty of attempted manufacture of methamphetamine, possession of methamphetamine and conspiracy to manufacture methamphetamine. We affirm.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

Idaho State Police conducted an investigation of Averett and Kamela Johnston, whom they suspected of manufacturing methamphetamine, between December 2000 and February 2001. During the investigation, officers conducted surveillance on Averett's residence and vehicle. On December 20, 2000, an officer followed Averett to Orofino Building Supply, where a sales clerk witnessed him purchase muriatic acid and plastic tubing. Officers witnessed Averett return to his residence with the items and take them inside the house. On December 27, officers observed Averett and Johnston together at

Averett's residence and in his vehicle, which Johnston was driving. Johnston subsequently drove Averett's vehicle to an IGA Foodliner where an officer observed her select five boxes of ephedrine tablets. The officer later witnessed her walk out of the store with an opaque plastic bag that appeared to contain boxes of similar shape and size to those containing the cold tablets and two bottles that resembled gas line Heet. Both products are used in the manufacturing of methamphetamine. On January 2, 2001, officers observed Johnston drive Averett's vehicle to a grocery store and a pharmacy. Johnston purchased another box of cold medicine and a 28-count package of syringes and needles. Officers then observed Johnston return to Averett's residence and take these items inside the house.

Based upon their investigation, law enforcement officers believed that a search of Averett's residence would produce items associated with the manufacture of methamphetamine. Law enforcement officers executed a search warrant on Averett's residence. During the search, officers found a substance that appeared to be a two-stage liquid, bottles of Heet, a large syringe with a clear plastic tube attached and containers of pseudoephedrine tablets, as well as other paraphernalia, believed to be associated with methamphetamine manufacturing.

Averett was arrested and initially charged by criminal complaint with attempted manufacture of a controlled substance in Clearwater County case number CR–01–00012 (case number 012). A preliminary hearing was held on January 24, 2001 and Averett was bound over to the district court.

Prior to Averett's release on bail, officers obtained a warrant for a second search of Averett's home. The search warrant was granted, in part, upon letters between Averett and Johnston that were intercepted by jail personnel and which implied that additional evidence might be present at Averett's residence. During the search, conducted on February 6, 2001, officers found more evidence including methamphetamine. Averett filed a motion to suppress the evidence seized from his residence during both searches, which was denied.

The district court subsequently dismissed case number 012 on October 16, 2001, upon the state's motion, noting the state's intention to re-file charges. A second criminal complaint was filed on October 24, alleging aiding and abetting in the manufacture of a controlled substance, under Clearwater County case number CR–01–00525 (case number 525). The preliminary hearing was originally scheduled for December 12, 2001. On that date, the magistrate addressed at length the relationship between Averett and Johnston and their advisory counsel.[1] Johnston asked numerous questions relating to this relationship and the magistrate warned both Averett and Johnston that advisory counsel would simply be available to answer questions. The magistrate also warned Averett and Johnston of the dangers of self-representation and clearly advised them to request appointed counsel. In addition, both Averett and the state moved for a continuance at the December 12 hearing, Averett's reasoning being that he needed more time to conduct discovery and prepare for the hearing. While Johnston objected to a continuance, the magistrate ultimately granted the motions for a continuance with respect to the preliminary hearing for both Averett and Johnston. Their preliminary hearing was conducted jointly over the course of two days, on February 26 and 27, 2002.

At the February hearing, the state offered substantial evidence and then moved to amend the complaint to conform to the evidence thus presented. Specifically, the state requested that the charge of aiding and abetting be dropped, and the following three charges be added: (1) attempted manufacturing of a controlled substance, (2) possession of a controlled substance, and (3) conspiracy with Johnston to manufacture methamphetamine. Averett and Johnston had not presented witnesses at this point, although their witnesses were apparently

---

1. While the record is not clear, it appears that Averett and Johnston had decided to represent themselves and waived appointed counsel. The magistrate, however, appointed advisory counsel on his own motion.

available to testify. The magistrate granted the state's motion, ruling that the amended complaint conformed to the evidence presented by the state at the preliminary hearing. Both defendants were advised of the nature of the new charges and were granted the opportunity to confer with advisory counsel. After a recess, Averett and Johnston declined the opportunity to proceed with the preliminary hearing and call witnesses. Averett did not object to the amended complaint or request a continuance at any time during the preliminary hearing. The magistrate bound Averett over to stand trial on the new charges.

Averett was thereafter arraigned by the district court on these charges. At a hearing in March of 2002, Averett's advisory counsel informed the court that Averett still wished to represent himself. Averett requested that advisory counsel be present to assist him whenever he felt it was necessary. The district court informed Averett that he would appoint counsel to represent Averett or that Averett could represent himself, but that the court would not appoint counsel to a lesser status. The district court also informed Averett that self-representation was inadvisable and that counsel could be appointed at a later date at Averett's request. Against the district court's advice, Averett elected to represent himself.

In August 2002, Averett requested, and the district court appointed, counsel to fully represent him. The court extended the pretrial motion deadlines to give appointed counsel the opportunity to file and argue such motions. Averett's appointed counsel informed the district court at a subsequent hearing that Averett would sign a waiver of his right to a speedy trial but a waiver was never filed. Appointed counsel also moved for an order of remand to the magistrate division for a preliminary hearing on the new charges, which the court denied, in part, because Averett had failed to object to the amendments at the time of that hearing. Appointed counsel also renewed Averett's motion to suppress, which was also denied.

On the first day of trial, January 6, 2003, Averett's counsel moved for a continuance. The district court denied the motion and the case proceeded to trial. The jury found Averett guilty on all counts. Averett received two concurrent sentences, each of ten years with two years determinate, for attempted manufacture of a controlled substance and conspiracy to manufacture a controlled substance. The sentence for possession of a controlled substance was limited to time already served. Averett appeals.

## II.

## ANALYSIS

On appeal, Averett raises eight issues: (1) that the district court failed to state its reasons for the dismissal of the original charges against him and that the state acted in bad faith by pursuing the dismissal; (2) that the district court deprived Averett of his right to the assistance of counsel at a critical stage of the proceedings; (3) that the district court erred in denying his motion for remand for preliminary hearing on the three new charges; (4) that the district court erred in failing to suppress evidence seized from the execution of the second search warrant upon his residence; (5) that he was denied his right to a speedy trial; (6) that the district court abused its discretion by denying Averett's motion for a continuance; (7) that the district court erred by admitting the hearsay declarations of Johnston as statements against penal interest; and (8) that there was insufficient evidence presented to prove beyond a reasonable doubt that Averett and/or Johnston performed an overt act in furtherance of a conspiracy to manufacture methamphetamine.

### 1. Order of Dismissal

Averett asserts that the district court's order dismissing the initial charge against him in case number 012 was improper because the state sought such dismissal for the sole purpose of delaying the trial. Averett argues the state has the burden on appeal of proving that such motion was not made in bad faith.

Idaho Code § 19-3506 provides: "An order for the dismissal of the action, as provided in this chapter, is a bar to any other

prosecution for the same offense, if it is a misdemeanor; but it is not a bar if the offense is a felony." The filing of a subsequent criminal action following dismissal of the original criminal action after preliminary proceedings is not a per se violation of due process. *Stockwell v. State,* 98 Idaho 797, 805, 573 P.2d 116, 124 (1977). However, the dismissal and refiling of a criminal complaint by the prosecutor, when done for the purpose of harassment, delay, or forum-shopping, can violate a defendant's right to due process. *State v. Bacon,* 117 Idaho 679, 683, 791 P.2d 429, 433 (1990); *Stockwell,* 98 Idaho at 806, 573 P.2d at 125. Before a due process violation can be found, the defendant must show that the pre-accusation delay caused substantial prejudice to the defendant's right to a fair trial and that the delay was a deliberate device to gain an advantage over the accused. *State v. Davis,* 141 Idaho 828, 842, 118 P.3d 160, 174 (Ct.App.2005); *State v. Burchard,* 123 Idaho 382, 386, 848 P.2d 440, 444 (Ct. App.1993).

■ Averett contends that case number 012 was dismissed for the sole purpose of delaying the trial. Averett does not cite to the record in support of his argument nor does he assert how the state gained a tactical advantage over him by requesting that the charge be dismissed. The record, however, demonstrates that the state requested the case be dismissed with the intent to file additional charges based upon new evidence seized from Averett's home during the execution of the second search warrant. Such new evidence constitutes a sufficient basis to dismiss and re-file charges. Furthermore, to support a due process claim, it is incumbent upon a defendant to affirmatively show actual prejudice and the effect of that prejudice upon his or her ability to present a defense. *State v. Murphy,* 99 Idaho 511, 514, 584 P.2d 1236, 1239 (1978). The proof of this prejudice must be definite and not speculative. *Id.* at 515, 584 P.2d at 1240. Averett has not demonstrated any actual prejudice as a result of the dismissal of case number 012, or that the state gained some tactical advantage over him. The district court, therefore, did not err in dismissing case number 012.

## 2. Right to Advisory Counsel and Appointed Counsel

Averett claims that the district court denied him his constitutional right to counsel. The district court ruled that it would appoint an attorney to represent Averett or that Averett could represent himself, but that Averett would not be appointed advisory or "standby" counsel. Averett argues that the district court's failure to appoint counsel in the manner requested by him constitutes constitutional error. Averett also asserts that the district court erred in accepting his waiver of counsel without inquiring into whether the waiver was knowing, voluntary and intelligent.

■ When the constitutional right to counsel is at issue, the Court reviews the record independently to determine if that right has been abridged. *State v. Pratt,* 125 Idaho 546, 555, 873 P.2d 800, 809 (1993). The Sixth Amendment guarantees indigent criminal defendants the right to appointed counsel. *State v. Jackson,* 140 Idaho 636, 639, 97 P.3d 1025, 1028 (Ct.App.2004). A defendant may reject a court-appointed attorney, however, and conduct his own defense, if the defendant has been made aware of the dangers inherent in self-representation so that such waiver is knowingly and intelligently made. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The burden is upon the state to show that the waiver satisfied this standard. *State v. Hunnel,* 125 Idaho 623, 625, 873 P.2d 877, 879 (1994). If there was a deprivation of the right to counsel through the trial court's acceptance of an invalid waiver, the error is fundamental and therefore necessitates our review although the claim was not raised below. *Id.* The waiver of the right to counsel is invalid if the record does not disclose that the defendant appreciated the risks of proceeding pro se at the time of the waiver. *Jackson,* 140 Idaho at 641, 97 P.3d at 1030.

Idaho courts have not addressed the specific issue of whether the appointment of standby counsel is discretionary. In most jurisdictions, however, the appointment of standby counsel is encouraged but discretionary. Anne Bowen Poulin, *The Role of Standby Counsel in Criminal Cases: In Twilight*

*Zone of the Criminal Justice System,* 75 N.Y.U. L.REV. 676, 683–84 (2000); ABA Standards for Criminal Justice 6–3.7. ABA Standard for Criminal Justice 6–3.7(a) advises that "[w]hen a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the appointment of standby counsel to assist the defendant when called upon." Standby counsel is encouraged for many reasons, including: (1) standby counsel's familiarity with criminal procedure; (2) standby counsel's understanding of the legal issues involved in the pro se defendant's case; and (3) the likelihood that standby counsel will not allow emotions to interfere with the presentation of the defense. Joseph A. Colquit, *Hybrid Representation: Standing the Two-sided Coin on its Edge,* 38 WAKE FOREST L.REV. 55, 72 (2003). The factors generally used when considering whether to appoint standby counsel are as follows: (1) the nature of the charges, (2) the foreseeable complexity of the proceeding, and (3) the defendant's capability for adequately defending himself during the proceeding. 75 N.Y.U. L.REV. 676, 683–84, n. 37.

While Averett asserts that he has a fundamental right to standby counsel, he has failed to provide authority for the proposition that the district court is constitutionally required to accommodate a defendant's wish to represent himself with the advice of standby counsel at the government's expense in order to avoid a violation of his right to appointed counsel. Averett cites *State v. Jackson* for the proposition that Idaho cases "have provided for the assistance of counsel in ways other than full representation." *Jackson,* however, addressed the question of whether the defendant's waiver of his right to counsel was knowing, voluntary and intelligent. *See generally Jackson,* 140 Idaho 636, 97 P.3d 1025. The fact that the defendant in that case represented himself with the advice of standby counsel was not central to the case.

 We agree that the appointment of standby counsel should be encouraged when a defendant elects to proceed to trial

pro se. We find no authority, however, to support Averett's proposition that the district court was constitutionally mandated to appoint standby counsel at Averett's request. Thus, we hold that the appointment of standby counsel is discretionary and not a matter of constitutional right.[2]

Averett also contends that his conviction should be reversed because the district court's inquiry into whether his waiver was knowing, voluntary and intelligent was inadequate. A defendant may reject a court-appointed attorney, however, and conduct his own defense, if the defendant has been made aware of the dangers inherent in self-representation so that such waiver is knowingly and intelligently made. *Jackson,* 140 Idaho at 639, 97 P.3d at 1028. The burden is on the state to show that the waiver satisfied this standard. *Hunnel,* 125 Idaho at 625, 873 P.2d at 879. Based upon the record as a whole, we hold the district court's inquiry was sufficient.

Averett first asserted his right to self-representation at his initial appearance in case number 525 before the magistrate on November 19, 2001. At that time, the magistrate advised Averett against self-representation, explaining that the case against him was serious and would involve legal technicalities that Averett might not understand. The magistrate then appointed advisory counsel, Robert Kwate, on the court's own motion. Averett appeared before the magistrate with Kwate as advisory counsel on December 12, 2001. Kwate informed the magistrate that he had met with Averett for an hour and one-half and discussed the dangers of self-representation. Kwate stated that he had advised Averett against representing himself. At that hearing, the magistrate explained the role and limitations of advisory counsel, as well as the disadvantage of proceeding pro se without knowledge of the rules of evidence and criminal procedure. The magistrate again advised Averett to proceed with the advantage of counsel, but Averett insisted on proceeding pro se.

---

**2.** Averett does not assert that the district court "abused its discretion" in declining to appoint standby counsel.

At a hearing on March 19, 2002, before the district court, Averett's advisory counsel stated that he had spoken with him several times about taking over as the attorney in this case and fully representing him, but that Averett still wished to represent himself despite counsel's advice to the contrary. The district judge then stated to Averett that proceeding without counsel was inadvisable and that he would be at a disadvantage to do so. The court again inquired of advisory counsel if he had gone over all options with Averett and fully advised him in that regard. After being so satisfied, the court determined that Averett's waiver was made knowingly and voluntarily and thereupon discharged Mr. Kwate from further representation. Averett then stated he would still like to represent himself but would not be opposed to advisory counsel. The district judge then informed Averett that he was not going to appoint Mr. Kwate to a lesser status but that if Averett changed his mind anytime in the future, the court would appoint counsel to represent him in this case.

■ We hold that the record as a whole supports the district court's ruling that Averett's waiver of counsel was knowing, voluntary and intelligent. *See Jackson*, 140 Idaho at 640, 97 P.3d at 1029. Averett was warned by the magistrate against the dangers of self-representation on several occasions. Advisory counsel informed the district court that he and Averett had discussed these dangers on more than one occasion. Averett was advised and warned time and again, at all levels, of the dangers in asserting his right to self-representation. Averett had theretofore conducted his own defense. To reverse Averett's conviction on the basis of the district court's final inquiry into his waiver under these circumstances would allow Averett to manipulate and frustrate the system. *See State v. Langley*, 110 Idaho 895, 899, 719 P.2d 1155, 1159 (1986).

■ In addition, even if we were to determine that the district court's inquiry was insufficient, Averett did not suffer prejudice by reason of the district court's action. On August 6, 2002, Averett requested and was appointed counsel. Averett's appointed counsel represented Averett during the five

months preceding the trial, as well as throughout the trial. *Cf. Jackson*, 140 Idaho at 641, 97 P.3d at 1030. After appointing counsel, the district court reset the pretrial motion deadlines so that counsel would have the opportunity to file and argue such motions on Averett's behalf. Thus, even assuming error, we further hold it was remedied by the formal appointment of counsel and the district court's accommodations to counsel once appointed.

### 3. Preliminary Hearing

On December 31, 2002, some ten months after his preliminary hearing and one week prior to trial, Averett filed a motion for remand to the magistrate division, asserting that he had not received a preliminary hearing on the charges in the state's amended complaint. Averett argued that he had not been prepared to address the three new charges in the amended complaint or to present evidence at the preliminary hearing.

The district court denied Averett's motion, determining that Averett had the opportunity to respond to the allegations, that Averett could have sought the advice of advisory counsel who was present at the preliminary hearing, and that Averett did not make an objection to the amended complaint at the preliminary hearing or shortly thereafter. The court also found that Averett had not suffered prejudice because he had ten months to prepare for trial and had not filed his motion in a timely fashion. We find no error in this ruling.

■ Furthermore, the purpose of a preliminary hearing is to reach a determination of whether a public offense has been committed and that there is probable or sufficient cause to believe that the defendant committed such offense. I.C.R. 5.1(b). Where a defendant receives a fair trial, defects connected with the preliminary hearing will afford no basis for disturbing the judgment of conviction. *Pratt*, 125 Idaho at 556, 873 P.2d at 810; *see also State v. Amerson*, 129 Idaho 395, 400, 925 P.2d 399, 404 (Ct.App.1996).

### 4. Motion to Suppress

■ Averett contends that the magistrate erred in granting a search warrant with re-

spect to the second search upon his home, alleging that a letter he wrote to Johnston while in jail should have been included in the warrant affidavit, along with the other letters so attached. If the letter had been included, Averett asserts that the magistrate would have concluded that there was no probable cause to issue the search warrant because the letter referenced a rumor that someone had been in Averett's house while he was in jail. Averett also contends that the information contained in the investigating officer's warrant affidavit was insufficient to establish probable cause for the second search warrant.

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

■ In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court established the following rule, which was ultimately adopted in Idaho:

> ... where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155–56, 98 S.Ct. 2674; *State v. Lindner*, 100 Idaho 37, 41, 592 P.2d 852, 856 (1979). The defendant bears the burden to prove by a preponderance of the evidence that the warrant affidavit contains intentional or reckless falsehoods. *State v. Peterson*,

133 Idaho 44, 47, 981 P.2d 1154, 1157 (Ct. App.1999).

The district court did not err in denying Averett's motion to suppress. Averett wrote additional letters while in jail, incorporated in the search warrant, that included statements such as, "I told him that my stash was no longer in the big tree like always but in the one next to it—sure hope they don't figure that one out ... so I'm thinkin' they must really got something on me" and "I don't think anybody realizes how bad I need to get out—I'm not sure how to get the word to them when they won't come see me but I have got to tie up some loose ends—I think you know what I mean." These statements, while not blatantly admitting to the acts for which he was charged, indicate in a cryptic manner that evidence would be found in Averett's residence. As noted by the district court, these statements, when taken·in context, are strongly suggestive.

Additionally, Averett's co-defendant, Kamela Johnston, wrote letters while in jail that were intercepted by jail personnel. These letters contained incriminating statements that Averett was involved in manufacturing methamphetamine. A letter containing an asserted rumor that someone else may have been in Averett's house would hardly detract from the likelihood of uncovering additional contraband therein. Moreover, Averett made no showing that this letter was omitted from the search warrant affidavit with either a knowing or reckless disregard of the truth. The other letters written by Averett, in addition to the fact that contraband had been located in his home in a previous search, support the magistrate's issuance of the second search warrant.

### 5. Right to Speedy Trial

Averett argues that he was deprived of his right to a speedy trial when appointed counsel informed the district court on August 22, 2002, that Averett would sign a waiver of such right. Averett claims that he did not sign a waiver, that he was not aware of his right to a speedy trial, and that a written waiver was never filed.

■ Averett concedes, however, that this issue was not raised below. Generally,

issues not raised below will not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). As stated in *State v. Garcia*, 126 Idaho 836, 892 P.2d 903 (Ct.App.1995), if a motion for relief based on the right to a speedy trial was not asserted below, the state did not receive the opportunity to present evidence or otherwise make a record addressing the issue, and the trial court has not had the opportunity to resolve the factual issues in making its determination. *Garcia*, 126 Idaho at 838, 892 P.2d at 905. Where the appellant fails to raise the issue below, this Court lacks the factual findings of the trial court and an adequate record to review. *Id.* We therefore decline to address this issue on appeal.

**6. Motion for Continuance**

 Averett claims that the district court abused its discretion by denying his motion for a continuance of the trial. The decision to grant a motion for a continuance rests within the sound discretion of the trial court. *State v. Ransom*, 124 Idaho 703, 706, 864 P.2d 149, 152 (1993). Unless an appellant shows that his or her substantial rights have been prejudiced by reason of a denial of a motion for continuance, appellate courts can only conclude that there was no abuse of discretion. *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct.App.1995).

On the morning of the first day of trial Averett's counsel, who had been appointed five months earlier, contended he was having difficulty obtaining discovery and was unable to adequately prepare for trial. The record indicates that the state complied with all discovery obligations and provided Averett's lawyer with requested documents. The difficulty stemmed from appointed counsel's attempts to obtain records from Averett's previous lawyers. The state opened its files to appointed counsel one week prior to trial and counsel gained access to approximately 25 to 30 additional documents. The district court determined that the delay in obtaining documents was insufficient to warrant a continuance, stating:

> I'm going to deny your motion, Mr. Groom. I'm denying it for several reasons. I can't remember when I assigned this case to myself, but I think I made a representation at that time to Counsel that I expected to try this case on the 6th of January, and that Counsel should prepare accordingly. I'm disappointed, obviously, to hear that you don't feel that you are as prepared as you could or should be, but I don't think that Mr. Averett would be prejudiced by that fact. I think this case is maybe the oldest case in the district. It relates to facts that arose two years ago. It's now January 6th, 2003, and the operative events began in December of 2000, and culminated in the second search warrant which was served, I believe, in February of 2001, may be wrong on that, but it was certainly no later than February of 2001, so it is an extremely old case. And one of the problems I have with granting a continuance is that memories fade. I think we may be hard pressed to get the memories jogged at this vantage point, and so I think it would be extremely unfair to continue this matter yet again. . . .

Averett emphasizes the fact that the state had made motions for continuances in the past and that these motions had been granted. This fact, however, does not render the district court's determination an abuse of discretion. Averett benefited from these continuances, which allowed counsel additional time to seek documents and prepare for trial. Furthermore, Averett has not specified how it was that he suffered prejudice in the presentation of his defense. We conclude that the district court did not abuse its discretion in denying the motion for continuance.

**7. Johnston's Declaration Against Penal Interest**

Averett next argues that the district court erred by admitting into evidence oral and written statements made by Kamela Johnston, his alleged co-conspirator, to her cellmate, Edith Konkol, while both were in jail. The state made a motion in limine on the third day of trial, seeking to admit this evidence as statements of a co-conspirator under Idaho Rule of Evidence 801(d)(2)(E), and/or as a declaration against penal interest under I.R.E. 804(b)(3). Konkol testified that

while in jail, she shared a cell with Johnston, and that Johnston described to her the process she used to make methamphetamine. Exhibit N1, a written statement authored by Johnston containing a "recipe" for manufacturing methamphetamine, was then admitted into evidence. Johnston further told Konkol that Averett was involved in making methamphetamine, both for his own use and for his personal war against the government. Exhibit N2, a written note drafted by Johnston reiterating these same sentiments, was also admitted through Konkol's testimony.

Konkol testified that Johnston asked her to go to Averett's home and remove a make-up kit and lithium batteries that the police had missed upon their first search. These items were related to the manufacturing of methamphetamine and Johnston expressed concern that the police would locate them upon a second search of Averett's home. She advised Konkol that Averett was her boyfriend and that they both were involved in the manufacture or processing of methamphetamine at different locations. Lastly, Johnston attempted to convince Konkol to help her make some methamphetamine at Konkol's house when they both were released from jail.

The district court granted the state's motion in limine, ruling that this evidence was admissible as statements against penal interest under I.R.E. 804(b)(3). The declaration against interest exception to the hearsay rule allows for the admission of a statement which was at the time of its making so far contrary to the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. I.R.E. 804(b)(3).

In interpreting the Federal counterpart to I.R.E. 804(b)(3), the United States Supreme Court stated, "In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Williamson v. United States*, 512 U.S.

594, 600–01, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The Court also emphasized that the statement must be sufficiently against the *declarant's* penal interest to be admissible and whether a reasonable person would believe the self-inculpatory statement to be true may only be determined in light of all the surrounding circumstances. *Id.* at 603–04, 114 S.Ct. 2431. The Court concluded that within a given declaration, there may be many statements both self-inculpatory and implicating another person, and that each statement must be determined to be sufficiently reliable even if made as part of a narrative. *Id.* at 604, 114 S.Ct. 2431. Since the Court's ruling in *Williamson*, federal courts have generally admitted third party statements that inculpate a defendant where three general conditions are satisfied: (1) the statement must be genuinely self-inculpatory to the declarant, (2) the statement is made to a private person and does not seek to curry the favor of law enforcement authorities, and (3) it does not shift blame. *See* STRONG JOHN W., MCCORMICK ON EVIDENCE, § 319 (5th ed. vol. 2 1999).

Accordingly, each admitted statement or part thereof must be found to be truly against the penal interest of the declarant. The determination of whether a statement is genuinely self-incriminatory in this narrow sense often requires an examination of context and the factual setting in which it was given. *Id.* Finally, any accomplice confession or admissions to police that shift some of the blame to the defendant do not fall within this hearsay exception. *See Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *State v. Eby*, 136 Idaho 534, 37 P.3d 625 (Ct.App.2001).

Applying the above criteria, we hold that the major portion of Johnston's declaration falls squarely within the I.R.E. 804(b)(3) hearsay exception of statements against penal interest. They were genuinely self-incriminatory, admitting to Johnston's knowledge, association and direct involvement with the manufacture of methamphetamine,[3] evi-

---

3. We note that Exhibit N1, the recipe for making methamphetamine, is not even hearsay, as it was not admitted to establish how methamphetamine

is actually made, i.e., for the truth of what it asserted, but to show that Johnston had knowledge of the process involved. *See State v. Harris,*

dencing her desire to enlist Konkol to secrete evidence from the police, as well as attempting to solicit Konkol to help her make more methamphetamine upon their release. In context, these statements, while uttered in a jail setting, were not given to police as a self-serving confession but to a cellmate in an attempt to expand Johnston's criminal involvement; nor did these declarations attempt to curry favor or shift blame away from Johnston and onto Averett.

■ However, the trial court did err in admitting into evidence—or in failing to redact—Johnston's statement that Averett made methamphetamine for his own use and for his personal war against the government. Such statement was in no way self-inculpatory as to Johnston. The trial court likewise erred in admitting Exhibit N2.

#### a. Harmless error

■■ Idaho Criminal Rule 52 provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Therefore, a new trial is unnecessary if the error was harmless. *State v. Scovell,* 136 Idaho 587, 593, 38 P.3d 625, 631 (Ct.App.2001). "The test for harmless error ... is whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence." *State v. Moore,* 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *State v. Slater,* 136 Idaho 293, 300, 32 P.3d 685, 692 (Ct.App. 2001).

■ We cannot conclude that the erroneous admission of but a small portion of Johnston's out-of-court statements, together with Exhibit N2, affected Averett's substantial rights. Where essentially the same information that was related through inadmissible evidence has also been placed before the jury through other admissible testimony, the error may be deemed harmless. *State v. Pecor,* 132 Idaho 359, 363, 972 P.2d 737, 741 (Ct.App.1998). Konkol's testimony properly relayed Johnston's statements that both she and Averett were involved in the manufacture and processing of methamphetamine at

various locations. Thus, Averett's substantial rights were not prejudicially affected by the admission of this evidence. *Id.*

In addition, the state presented compelling if not overwhelming evidence of Averett's involvement in the possession and manufacture of methamphetamine. An Orofino Builders Supply employee testified that she recalled Averett's purchase of muriatic acid and clear plastic tubing. An Idaho State Police officer testified that he witnessed Johnston take five boxes of Home Base ephedrine cold tablets off a shelf on the pharmaceutical aisle of the IGA Foodliner and saw Johnston leave with an opaque plastic bag which bore the outline of the cardboard boxes containing the cold tablets and yellow plastic containers which were the same height and shape of gas line Heet. The same officer then watched Johnston drive to another pharmacy and walk out the back door with a plastic bag. He then followed Johnston to Averett's residence where she took what appeared to be the same bags inside the home. Officers again witnessed Johnston drive Averett's vehicle to a grocery store and a pharmacy, where she purchased cold medicine and syringes. Johnston returned to Averett's home and took her purchases inside. Such observations were relevant to connect Johnston to Averett in a conspiracy to manufacture methamphetamine.

During the first search of Averett's home, officers found evidence of a methamphetamine manufacturing operation. In the kitchen, officers found a Pyrex dish, a mason jar containing a two-stage liquid, several bottles of Heet and coffee filters containing powdery residue, all located within close proximity of each other. In the living room and bedroom, officer found containers of pseudoephedrine tablets, several bottles of Heet, a gallon of Xylol industrial cleaner, a thermos containing numerous baggies and a syringe. Unopened boxes of the Home Base cold tablets, the same brand purchased by Johnston, were also found during a search. Officers trained in the detection of methamphetamine laboratories testified that these items are routinely used in the manufacturing of meth-

amphetamine. Lab testing of the liquids and coffee filters seized from Averett's home revealed the presence of ephedrine and pseudoephedrine.

While Averett and Johnston were in custody, they attempted to communicate with each other via written letters. The letters were intercepted by jail personnel and used to obtain a second search warrant for Averett's home. During the second search of Averett's home, officers used information found in the intercepted communications to locate evidence of contraband. Completed methamphetamine was found during this search. The letters were also admitted into evidence.

Finally, the trial court properly admitted the majority of Johnston's statements to Konkol as a declaration against her penal interest. Given the state's evidence against Averett, the jury would have reached the same result, beyond a reasonable doubt, had the evidentiary error not occurred. *See Eby*, 136 Idaho at 539, 37 P.3d at 630; *Pecor*, 132 Idaho at 363, 972 P.2d at 741. The district court's error did not, therefore, result in prejudice to Averett and must be deemed harmless.

### 8. Sufficiency of Evidence

■ Finally, Averett argues that there was insufficient evidence to prove an overt act in furtherance of the conspiracy between him and Johnston. Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App.1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App.1991). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera–Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

■ As noted earlier, there was strong and compelling evidence to demonstrate Averett and Johnston's joint involvement in the manufacture of methamphetamine. Evidence of Johnston's close association with Averett, her acts of going store to store in Averett's vehicle to purchase items associated with the manufacture of methamphetamine, and the discovery of many of those items in Averett's home, coupled with the two-stage liquid and numerous other indicia of manufacturing, are more than sufficient to infer a conspiratorial intent and agreement. In *State v. Brown*, 113 Idaho 480, 745 P.3d 1101 (Ct.App.1987), this Court stated that, "the overt act requirement is satisfied by slight evidence," and that the "act in furtherance of the conspiracy need not itself be criminal." *Brown*, 113 Idaho at 493, 745 P.2d at 1114. It is not required that there be a direct connection between the overt act of legally purchasing items used in the manufacture of methamphetamine and the criminal act of producing methamphetamine. The legal act of purchasing items necessary for the manufacture of the methamphetamine is sufficient to establish an overt act in furtherance of the conspiracy.

Furthermore, this Court will not substitute its view, or any other view, for that of the jury with respect to reasonable inferences to be drawn from the evidence, nor will this Court overturn a conviction entered upon a jury verdict where there is substantial evidence upon which the jury could have found that the state proved the essential elements of the crime beyond a reasonable doubt. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. The state presented substantial evidence to infer that the products were purchased in furtherance of the conspiratorial agreement between Averett and Johnston to manufacture methamphetamine.

### III.

### CONCLUSION

For the reasons stated above, we affirm Averett's judgment of conviction for the

crimes of attempted manufacture of methamphetamine, possession of methamphetamine and conspiracy to manufacture methamphetamine.

Judge LANSING and Judge GUTIERREZ concur.

