# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 40646

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 731 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 18, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TIMOTHY EUGENE ESTEP, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for rape and dispensing alcohol to a minor and fixed life sentence for rape, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant. Spencer J. Hahn argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

WALTERS, Judge Pro Tem

Timothy Eugene Estep appeals from his judgment of conviction entered upon a jury verdict finding him guilty of rape and dispensing alcohol to a minor. Estep specifically claims that the district court denied him his constitutional right to represent himself and abused its discretion by imposing an excessive sentence of fixed life imprisonment for rape. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In 2006, Estep was charged with lewd conduct with a minor child under sixteen for inappropriately touching a developmentally disabled twelve-year-old girl. Estep ultimately pled guilty to felony injury to a child and was sentenced in 2008 to a unified term of six years, with a minimum period of confinement of two years. This sentence was suspended, however, and Estep was placed on probation for five years.

1

During his probation, Estep met and befriended the eighteen-year-old victim in the current case. On August 3, 2010, Estep invited the victim to go swimming with him and a few others, during which time Estep provided the victim with alcohol. The victim eventually became intoxicated and sick. Estep drove the victim to his home, bathed her, and had sexual intercourse with her while she lay unconscious in his bed. The victim awoke during the rape, but pretended to be asleep. After Estep finished, the victim got up, put on some clothing, and ran from the residence. Estep followed her and tried to persuade her to get in his vehicle. After she refused, he threw some of her clothing at her and drove away. The victim contacted police and was taken to a hospital for a rape examination. Police interviewed Estep at his home and later at the police station. Estep made several inconsistent and incriminating statements, but denied having sex with the victim. He eventually admitted that he had sex with the victim, although he contended that it occurred while she was vomiting into a toilet because she could not protest.

Estep was charged with rape, I.C. § 18-6101, and with dispensing alcohol to a minor, I.C. § 23-603. During a pretrial process that took over two years, Estep requested to represent himself several times. Judge Benjamin R. Simpson denied each request after finding that Estep was not competent to represent himself. Shortly before Estep's trial was to begin, Estep allegedly made a death threat against Judge Simpson. As a result, Judge Simpson voluntarily disqualified himself from the case and Judge John T. Mitchell presided over Estep's case. Estep was tried *in abstentia* at his request and a jury found Estep guilty of both counts. The district court sentenced Estep to a fixed life term for rape.[1] Estep appeals.

## II.
## ANALYSIS

### A. Right to Self-Representation

Estep argues that the district court violated Estep's rights under Article I, Section 13 of the Idaho Constitution and the Sixth Amendment to the United States Constitution when it denied his several requests to represent himself at trial.[2] When an alleged violation of a

---

[1] Estep was also sentenced to 180 days in jail for dispensing alcohol to a minor, with 180 days of credit for time served. However, Estep does not challenge this sentence on appeal.

[2] In his briefing, Estep argued that Article I, Section 13 of the Idaho Constitution provided more protection for the right of self-representation than is afforded under the United States

2

constitutional right is asserted, we accept the trial court's findings of fact if supported by substantial evidence; however, we freely review the court's application of constitutional requirements to the facts as found. *State v. Anderson*, 144 Idaho 743, 746, 170 P.3d 886, 889 (2007). A criminal defendant has the constitutional right to waive the assistance of counsel and to self-represent. *See Faretta v. California*, 422 U.S. 806, 834 (1975); *State v. Averett*, 142 Idaho 879, 885, 136 P.3d 350, 356 (Ct. App. 2006). The right to self-representation, however, is not absolute. *Martinez v. Court of Appeal of California, Fourth App. Dist.*, 528 U.S. 152, 161-62 (2000); *State v. Reber*, 138 Idaho 275, 277, 61 P.3d 632, 634 (Ct. App. 2002). Because a self-represented defendant relinquishes many of the traditional benefits associated with the right to counsel, a waiver of the right to counsel may only be accepted as valid if it was knowingly, voluntarily, and intelligently made. *Faretta*, 422 U.S. at 835; *State v. Lankford*, 116 Idaho 860, 865, 781 P.2d 197, 202 (1989); *Averett*, 142 Idaho at 885, 136 P.3d at 356. For a waiver to be knowing and intelligent, the defendant must be aware of the nature of the charges filed against him or her, the penalties that may result from those charges, and the dangers and disadvantages of self-representation. *See Faretta*, 422 U.S. at 835; *State v. Lovelace*, 140 Idaho 53, 64, 90 P.3d 278, 289 (2003); *Lankford*, 116 Idaho at 865, 781 P.2d at 202 (1989). The burden is upon the state to show that the waiver satisfied this standard when a defendant's request to self-represent is granted. *State v. Hunnel*, 125 Idaho 623, 625, 873 P.2d 877, 879 (1994).

However, when dealing with a mentally ill or deficient defendant, a state may insist upon representation by counsel if a defendant is competent enough to stand trial and assist with his or her own defense but is not competent enough to carry out the basic tasks necessary to present a defense without the assistance of counsel. *Indiana v. Edwards*, 554 U.S. 164, 175-76 (2008); *State v. Hawkins*, 148 Idaho 774, 779, 229 P.3d 379, 384 (Ct. App. 2009). This is permissible even if the defendant seems to understand the disadvantages of self-representation as required by *Faretta*. *See Edwards*, 554 U.S at 175-176. *Edwards* did not adopt a specific standard, but instead recognized that the trial judge "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 554 U.S. at 177.

---

Supreme Court's Sixth Amendment jurisprudence. However, Estep withdrew this issue at oral argument.

Estep argues that his right to self-representation was violated by Judge Simpson's refusal to allow Estep to proceed pro se. Specifically, he asserts error in the district court's pretrial determinations that Estep was not competent to self-represent. At oral argument, Estep specified that he was only challenging Judge Simpson's June 9, 2011, decision denying his initial request to proceed pro se. We need not address whether the district court erred in concluding that Estep was not competent to self-represent, as the record indicates that Estep failed to make an unequivocal request to self-represent at the June 9 hearing. A defendant's demand to proceed pro se must be clear, unequivocal, and timely. *State v. Lippert*, 145 Idaho 586, 597, 181 P.3d 512, 523 (Ct. App. 2007). During a discussion at the June 9 hearing in which Estep expressed displeasure with his appointed counsel and his desire to hire private counsel, the following exchange took place:

> [ESTEP]:      [Private counsel] was going to try to get my funds from my estate to appoint me counsel. Let me find my notes. I was reading it, but I kind of nodded off there for a moment. But anyway, you were going to let me attempt to do an ex parte again. *Probably no way you would let me defend myself, is there? Only a fool defends himself, and I am pretty stupid.*
>
> [COURT]:      If you are going to defend yourself, we are going to have to have a colloquy after today, and I am not going to put you on the trial docket. I can get you on the trial docket fairly quickly.
>
> [ESTEP]:      *That's up to you. I would prefer to defend myself.* At this point--if I am wrong, you have got no witnesses. We have never met except in court. I had five different attorneys to handle my case in the preliminaries, starting with--
>
> [COURT]:      Most people only get one.
>
> [ESTEP]:      I know, but I used them all up. But at this point, *I think if I could ex parte, maybe I could set my own defense up.*
>
> [COURT]:      You keep saying ex parte. Are you saying you want to represent yourself in propria?
>
> [ESTEP]:      In propria.
>
> . . . .
>
> [ESTEP]:      If I go with the current counsel, they have done nothing. So, I don't feel like I would be any worse represented by myself next Tuesday. And I have been in custody for a year. And this year--I prefer not to wait. *If possible*, sir, we could go ahead--I guess what I am asking, if I could represent myself and go ahead with the date of the 13th of June at 3:00. *That's what I would prefer. But it's up to you.*

(Emphasis added.)

Judge Simpson then conducted a colloquy with Estep to determine whether Estep understood the consequences of proceeding pro se and was capable of doing so, concluding at the end of that colloquy that Estep was not capable of representing himself. As indicated by the italicized portions above, all of Estep's requests to self-represent were, at best, equivocal. Indeed, the district court even had to clarify with Estep that he was attempting to request to proceed pro se. In addition, the context preceding and following the request suggested that Estep was primarily interested in obtaining different counsel and considered proceeding pro se only if substitute counsel could not be obtained. Furthermore, Estep's competence to stand trial, much less self-represent, was in question throughout the more than two years of pretrial proceedings. Such equivocal statements made against this backdrop are insufficient to waive the right to counsel and invoke the right to self-represent. *See Brewer v. Williams*, 430 U.S. 387, 404 (1977) (stating that courts must indulge in every reasonable presumption against waiver of the right to counsel); *Faretta*, 422 U.S. at 835 (noting that the defendant had "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel"); *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) (concluding that, because defendants normally give up more than they gain when electing self-representation, courts must be reasonably certain a defendant actually wishes to self-represent; a defendant who equivocates "is presumed to have requested the assistance of counsel"). Accordingly, there was no denial of Estep's right to self-represent resulting from Judge Simpson's June 9 decision, as Estep failed to unequivocally request to self-represent.

Moreover, even if we deem Estep's June 9 request unequivocal, Estep subsequently withdrew his request to self-represent. Estep's appointed counsel filed a motion to withdraw and to allow Estep to proceed pro se with standby counsel on November 21, 2012, (after Judge Mitchell had replaced Judge Simpson). However, during a hearing on that motion, Estep's attorney informed the district court that Estep no longer wanted to proceed pro se; instead, Estep wanted a different attorney. The district court denied that motion due to the proximity of the upcoming trial. Estep was present at the hearing and did not dispute his counsel's retraction of his motion to proceed pro se with standby counsel. This not only withdrew Estep's immediate request to proceed pro se, but also waived any previous requests made up to that point, including the equivocal June 9 request.

5

Estep made a subsequent request to self-represent through a December 7, 2012, jail communication. In it, Estep specifically requested to proceed pro se or to be able to cross-examine prosecution witnesses. When a defendant is represented by counsel, it is generally held to be within the discretion of the trial court to require all documents to be filed through and by the defendant's legal representative. *See, e.g.*, *United States v. George*, 85 F.3d 1433, 1439 (9th Cir. 1996) (The decision to allow a pro se litigant to proceed with some form of hybrid representation is reviewed for abuse of discretion.); *United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir. 1987) (finding no error with district court's refusal to acknowledge defendant's pro se filings when defendant was represented); *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) ("A criminal defendant does not have an absolute right to both self-representation and the assistance of counsel."); *People v. Serio*, 830 N.E.2d 749, 757 (Ill. Ct. App. 2005) (holding that an accused has the right to either proceed pro se or be represented by counsel, but there is no right to both hybrid representation whereby he or she would receive the services of counsel and still be permitted to file pro se motions); *Commonwealth v. Padilla*, 80 A.3d 1238, 1259, 1262 (Pa. 2013) (stating that no defendant has a right to hybrid representation, so the defendant had no right to have his pro se motions addressed on the merits); *State v. Wareham*, 143 P.3d 302, 309 (Utah Ct. App. 2006) (stating that when a defendant is represented by counsel, he or she generally has no authority to file pro se motions and the court should not consider them). An exception to this rule exists for pro se motions addressing aspects of the representation, including requests for self-representation or substitution of counsel. *See, e.g.*, *In re Barnett*, 73 P.3d 1106, 1110 (Cal. 2003) (noting that the one exception to the general rule that criminal defendants may not engage in self-representation while represented by counsel is for pro se motions regarding representation, including requests for self-representation and for substitution of counsel); *Serio*, 830 N.E.2d at 757 (noting an exception to the general rule when defendant files a pro se motion to disqualify appointed counsel); *Wareham*, 143 P.3d at 309 (citing *Serio* for the same proposition). As a result, the December 7 communication would be proper if it constituted a motion to proceed pro se.

Estep assumes that the December 7 communication constituted a valid motion and argues that the district court failed to afford Estep his due process rights by not providing him an opportunity to be heard on the motion. However, I.C.R. 12(c) requires that every motion be typed or printed, with the only exception being for legibly handwritten motions made on "printed

forms approved by the Supreme Court or the Administrative District Judge or distributed through the Court Assistance Office in the county where the lawsuit is pending." Estep's jail communication was not submitted on such an approved preprinted form.

Even assuming that Estep's jail communication sufficed as a motion to proceed pro se, Estep abandoned that motion by not pursuing it further when afforded the opportunity to do so prior to the start of trial on December 10, 2012. At that time, the district court addressed pretrial matters, including whether restraints should be used, Estep's refusal to wear civilian clothing provided for him in lieu of his orange jail clothing, and whether to grant Estep's request to be tried *in abstentia*. Judge Mitchell engaged in an extended discussion with both Estep and his counsel regarding these issues, including Estep's reasons for wanting to proceed *in abstentia*. On this point, Estep stated:

> Um, your honor, I believe abstentia would be best for me. *I'll trust [counsel's] abilities to defend me.* We've had some disagreements, and I feel like that if I'm present, I may bring those disagreements up. Uh, I haven't slept properly in jail, although today I am very clear. I haven't ate properly on a religious fast, and I'm not sure how that's gonna affect me later on, but I am currently in a clear state of mind. *I believe that you and this court has the ability to handle my fate properly*, and me being there I only think could cause me to at some point be agitated. I can't always control my behavior.

(Emphasis added.) Thus, instead of pursuing his request to proceed pro se, Estep endorsed the abilities of his attorney to adequately present his defense, even in his absence. A defendant abandons his or her request to proceed pro se if, when faced with an opportunity to address the issue before the judge that will preside over the trial, the defendant stands silent. *See Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982) (stating that a waiver may be found if it reasonably appears to the court that defendant has abandoned his or her initial request to self-represent); *Swan v. Commonwealth*, 384 S.W.3d 77, 95 (Ky. 2012) (holding that a defendant had abandoned his initial request to self-represent when he failed to raise the issue before the trial judge after the original judge had passed on the issue until trial). As a result, Estep abandoned this subsequent request to proceed pro se before the judge presiding over his trial by not pursuing it further when given the opportunity to do so.

Estep's June 9 request to proceed pro se was equivocal. Even if it had been unequivocal, Estep withdrew his request to proceed pro se during a motion hearing just weeks before trial, thereby waiving all prior requests. Finally, assuming that Estep's jail communication constituted a proper request to self-represent, Estep nonetheless abandoned that request by standing mute

when given the opportunity to address the request on the morning of trial. Accordingly, Estep's claim that his right to self-representation was violated is without merit.

**B.      Sentence Review**

Estep contends that the district court abused its discretion by imposing an excessive sentence under the circumstances. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). Nonetheless, the issue before this Court remains whether the sentence is plainly excessive under any reasonable view of the facts, not whether the sentence is one that we would have imposed. *Toohill*, 103 Idaho at 568, 650 P.2d at 710. If reasonable minds might differ as to whether the sentence is excessive, we are not free to substitute our view for that of the district court. *Id.*

Rape may be punished by up to a fixed life sentence. I.C. § 18-6104; *State v. Martinez*, 111 Idaho 281, 284 n.2, 723 P.2d 825, 828 n.2 (1986). Estep acknowledges that his sentence is, therefore, not illegal. Thus, he bears the burden on appeal of showing that his fixed life sentence for rape is excessive. *See Brown*, 121 Idaho at 393, 825 P.2d at 490. Estep contends that the fixed life sentence imposed by the district court is excessive under any view of the facts in light of an alleged prior brain injury and the nonviolent nature of his offense. He argues that, because he used no force or threats in committing the rape, his offense was not sufficiently egregious to warrant imposition of a fixed life sentence. Moreover, he contends that fixed life sentences for rape or the similar crime of lewd conduct with a minor child under sixteen have previously been

8

upheld only when the crime involved violence or was repetitive, very cruel, or life threatening. *See State v. Cross*, 132 Idaho 667, 672, 978 P.2d 227, 232 (1999) (upholding a fixed life sentence for lewd conduct with a minor due to the repetitive nature of the conduct and the defendant's potential for violence); *see also Brown*, 121 Idaho at 394, 825 P.2d at 491 (upholding a fixed life sentence for rape, robbery, and aggravated battery after the defendant beat his victim on the head with a brick before raping her, stabbing her twice in the chest, and cutting her throat).

Estep misunderstands the proper analysis in this case. A fixed life sentence is indeed a serious penalty and should not be imposed lightly. *State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997). Moreover, a fixed life sentence should not be regarded as a judicial hedge against uncertainty as to whether an offender will ever recidivate. *Cross*, 132 Idaho at 672, 978 P.2d at 232. However, such a sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence *or* if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society. *Jackson*, 130 Idaho at 294, 939 P.2d at 1373; *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct. App. 1988). Thus, a fixed life sentence may be upheld if the sentencing court finds that either scenario or a combination thereof exists.

Estep alleges that the district court impermissibly used the fixed life sentence as a hedge against uncertainty. We disagree. The district court did comment about not wanting the victims of Estep's crimes to have any doubt that he will ever be out in society again and stated that it would not entertain any sentence other than a fixed life sentence because Estep could continue to commit crimes, even at an advanced age, if ever released. However, the district court determined that Estep lacked any potential for rehabilitation and thus life imprisonment was the only feasible means of protecting society.

The district court began by noting that Estep was a repeat offender, as he had previously been convicted of felony injury to a child, which was reduced from lewd conduct with a minor child under sixteen, for molesting a mentally disabled twelve-year-old girl. The district court noted that, upon learning of the charges in the 2006 case, Estep absconded to Canada and attempted to fake his death before being caught a year later. Estep was nonetheless given the opportunity at rehabilitation when his sentence in the 2006 case was suspended and he was placed on probation for five years. During this time, Estep was to undergo a full-disclosure

polygraph examination as a term of his probation. Estep underwent several polygraph examinations, none of which were successful due to his initial failure to be truthful and subsequent inability to finish the examinations.

At one of these examinations held in August 2008, Estep voluntarily disclosed that he had twenty-eight prior victims under the age of eighteen. Of these, eighteen were thirteen years of age, eight were fourteen years of age, and two were fifteen years of age. Twenty-three of the instances involved Estep taking advantage of the victims while intoxicated, many of which involved intercourse while the victims were passed out, as in this case. Estep also admitted during the examination that, while still married to them, he had forced himself upon two of his former wives against their will and had sex with another former wife without her participation or permission, though he later denied this admission during sentencing.

The district court then noted that, while on probation for the 2006 crime, Estep committed the instant offense, which followed the disturbing pattern of victims he had admitted to just two years prior. Specifically, the district court stated the following:

> The reason for my life sentence is, either way, you can't be placed on probation. If you were truthful in what you said regarding those 29 [sic] prior victims of sex crimes, then you're a serial rapist and you need to go to prison. If you're just making this stuff up, you're making up stuff that in 21 of the 29 [sic] cases is the exact blueprint you followed two years later, August 4th, 2010, with [the victim] in the present case. I don't see a different outcome for you. It would not make any difference whether you were telling [the polygrapher] the truth in 2008 or fabricating it, because even if you're fabricating it, you are playing this event that's about to happen to [the victim] on August 4th, 2010, over and over and over again in your very sick mind.

In reference to Estep's admission regarding his prior ex-wives, the district court again acknowledged that it was unclear whether Estep was telling the truth, but noted that it made little difference:

> Again, trying to look at this in the light best to you, sir, you're just creating chaff, you're trying to create confusion, and no one can supervise you with that confusion. You can't be on probation if you can't answer truthfully. If you were answering truthfully, then you raped three women repeatedly while they were your wives.

The district court went on to note that, whether or not Estep had fabricated the twenty-eight prior victims or the incidents with his ex-wives to confuse the issue, "the public obviously needs to be protected from" him. This is because, if true, everything that Estep has admitted to since his first crime indicates that he is "a serial rapist"; if false, Estep's statements indicate

10

"such a deeply-ingrained sociopath" that "probation can't work with" him. This was supported by the record and by testimony during sentencing from Estep's probation officer, who testified to Estep's several probation violations, including the current offense. She also testified that Estep had failed to enter into sex-offender treatment as required by the terms of his probation and had failed to provide a full-disclosure polygraph necessary for treatment. Ultimately, she opined that the probation department did not have any services that would make it more likely that Estep would be successful on probation. The district court then went through the *Toohill* factors, specifying that, because rehabilitation was not possible, the primary purpose of the fixed life sentence was protection of the public:

> In your situation, Mr. Estep, I do not feel that rehabilitation is even remotely possible. Even were it to be possible, it is impossible at this juncture for rehabilitation and treatment to occur in our community. There is not one doubt in my mind about that. If treatment and rehabilitation are to occur, it can only occur in your case in a secure setting, in prison.

As noted by the district court and supported by the record, Estep has repeatedly shown that he poses a significant danger to the community and young females in particular. He already has two known victims and, by his own admission, may have dozens more. Even if Estep is fabricating these other victims, most of the fabrications involved virtually the identical circumstances that occurred here. This means that, for at least two years, Estep was fantasizing about the crime he committed here. Moreover, if these other victims were fabricated, Estep did so for the purpose of manipulation and deception. Indeed, Estep's presentence investigation report and conduct simultaneously present a deeply disturbed individual and a master manipulator. This manipulation of people and systems, combined with Estep's past failure to comply with the requirements of his probation, precludes the possibility of supervision and treatment in the community. In light of this record, the district court did not abuse its discretion in concluding that Estep presents a significant danger to the community and no possibility of rehabilitation. Thus, the only feasible means of protecting society was to impose a fixed life sentence. These findings are supported by substantial evidence in the record and were not an abuse of discretion. Accordingly, Estep's fixed life sentence for rape is not excessive under the circumstances.

11

## III.

## CONCLUSION

Estep was not denied his right to self-representation because he failed to make an unequivocal request to do so, he subsequently withdrew his request, and he abandoned a renewed request by not addressing it when given the opportunity on the morning of trial. Furthermore, Estep has failed to show that the district court abused its discretion by imposing a fixed life sentence, as the record indicates that there is no possibility of rehabilitating Estep. Accordingly, we affirm Estep's judgment of conviction for rape and dispensing alcohol to a minor and his fixed life sentence for rape.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR.**