**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37303**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 363 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 14, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| LESLIE ROY LYNCH, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Hon. John K. Butler, District Judge.

Judgment of conviction for sexual abuse of a child under the age of sixteen years, <u>affirmed</u>.

Law Office of Andrew Parnes, Ketchum, for appellant. Andrew Parnes, argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello, argued.

_____

GUTIERREZ, Judge

Leslie Roy Lynch appeals from his judgment of conviction after entry of a guilty plea to two counts of sexual abuse of a child under the age of sixteen years. Specifically, Lynch asserts the district court erred in denying his motion to withdraw his guilty plea because the plea was coerced and Lynch received ineffective assistance of counsel.

**I.**

**FACTS AND PROCEDURE**

In 1997, Lynch was charged with two counts of lewd and lascivious conduct for acts he committed against two minor girls in 1996. After a preliminary hearing, the State moved to dismiss the case without prejudice. In 2008, Lynch was arrested on probable cause for a felony purportedly involving similar acts committed against a different young girl. Lynch was not charged with a crime for the conduct that resulted in the arrest; however, the State re-filed the

1

charges that had been dismissed in 1997[1] and added another count of lewd conduct and one count of sexual abuse of a minor for conduct that also occurred in 1996.

On the renewed and additional charges, Lynch's original defense counsel filed two motions to suppress evidence: one based on an overbroad search warrant and the other based on illegal seizure. He also filed a motion for a "taint hearing" and a motion in limine, seeking to exclude certain photographs taken as evidence. To introduce evidence of prior bad acts under Idaho Rule of Evidence 404(b), the State filed a motion in limine (404(b) motion). Prior to the hearings on those motions, defense counsel made numerous motions to withdraw as Lynch's counsel, which the district court denied. Lynch nonetheless retained new counsel. Lynch's new defense counsel filed a notice of appearance on April 10, 2009, four days prior to the hearing on the State's 404(b) motion.

At the hearing on the State's 404(b) motion, defense counsel informed the court that he had just been retained and had not been able to review the material. However, because the State's witnesses were present to testify, counsel proceeded with the hearing, cross-examined the State's witnesses, and reserved the right to recall witnesses, present rebuttal witnesses, and/or produce other evidence. Counsel also filed an ex parte motion to continue the trial, which the district court later granted.

The district court heard all other pending motions, including the motions to suppress and the defense's motion in limine, on June 3, 2009. After oral argument from both parties and supplemental briefing, the district court issued a written order on the defense's motions, which included the following findings and rulings: (1) the defense's motion in limine was no longer at issue because the State was not seeking to introduce the photographic evidence contested therein; (2) the ruling on the motion to suppress based on an overbroad warrant was reserved until such time as the State sought to introduce the evidence at issue; and (3) the motion to suppress based on illegal seizure was denied. The district court issued a supplemental written order on the motion to suppress based on an overbroad warrant after learning that the State did not intend to introduce evidence or other exhibits seized as a result of that search warrant and concluded the

---

[1] A witness for the State later testified that the case was originally dismissed due to a need for more corroborating evidence.

motion was no longer at issue. Finally, in another written order, the district court granted in part and denied in part the State's 404(b) motion.[2]

On July 26, 2009, two days prior to the pretrial conference, Lynch's defense counsel met with him to discuss a plea offer from the State that had previously been relayed to Lynch and recommended that Lynch take the plea offer. At the pretrial conference, the State submitted an amended information of two counts of sexual abuse of a child under the age of sixteen years based on the plea agreement. The district court then conducted a colloquy with Lynch wherein Lynch entered a guilty plea to the two counts of sexual abuse of a child under the age of sixteen years, Idaho Code § 18-1506. The other charges were dismissed. After preparation of a presentence investigation report and psychosexual evaluation, the district court sentenced Lynch to a unified term of twenty years, with ten years determinate on each count, to be served concurrently. On an Idaho Criminal Rule 35 motion to correct an illegal sentence, the district court reduced the sentences to a unified term of fifteen years, with ten years determinate on each count, to be served concurrently.[3]

After sentencing, Lynch filed a timely notice of appeal. Thereafter, he moved to withdraw his guilty plea in district court and the appeal was suspended pending the motion. In support of his motion to withdraw his guilty plea, Lynch argued his plea was coerced because of the lack of communication between him and his attorneys, because he felt he had no choice but to plead guilty, and because his attorneys told him if he pled guilty he would have a good chance at getting probation. Lynch claimed he attempted to reach his attorneys numerous times between the hearing on the State's motion in limine and the next court date of June 3, nearly two months later, with little success. He also asserted his attorneys repeatedly told him that probation was a possible, if not probable, sentence and that he could enter an *Alford*[4] plea; however, neither of the attorneys' assertions were true. Additionally, Lynch argued he received ineffective

---

[2]    Defense counsel did not pursue the motion for a "taint hearing."

[3]    The original sentence exceeded the statutory maximum allowed by law at the time of the offense. Idaho Code § 18-1506 was amended in 2006; the amendment increased the maximum sentence.

[4]    *See North Carolina v. Alford*, 400 U.S. 25 (1970).

assistance of counsel because of defense counsel's lack of investigation and other preparation for trial, among other failures. As one example, Lynch pointed to the fact that at the June 3 hearing on the motions, defense counsel called no witnesses, other than Lynch himself, and made no challenge to the admission of certain evidence in the case. Lynch also claimed defense counsel failed to investigate or interview any of the State's witnesses and should have filed additional pretrial motions.

The district court denied Lynch's motion to withdraw his guilty plea, finding Lynch failed to present evidence of coercion, fraud, fear, or ignorance. The district court also found no evidence of deficiency in defense counsel's assistance and no prejudice to Lynch resulting from the manner in which the case was handled.

## II.

## STANDARD OF REVIEW

As a threshold matter in considering a motion to withdraw a guilty plea, the district court considers whether or not the defendant entered the plea voluntarily. I.C.R. 11(c); *State v. Dopp*, 124 Idaho 481, 483-84, 861 P.2d 51, 53-54 (1993); *see State v. Martinez*, 89 Idaho 129, 139, 403 P.2d 597, 603 (1965); *State v. Hanslovan*, 147 Idaho 530, 536, 211 P.3d 775, 781 (Ct. App. 2008). If a plea is not voluntary, the trial court must grant the relief and allow the defendant to withdraw the plea. *State v. Detweiler*, 115 Idaho 443, 445, 767 P.2d 286, 288 (Ct. App. 1989). A district court's finding of voluntariness of a plea will be upheld on appeal if it can be reasonably inferred from the record as a whole. *Dopp*, 124 Idaho at 483-84, 861 P.2d at 53-54. If the court determines that the plea was voluntary, whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986).

## III.

## DISCUSSION

A.      **Voluntariness of the Plea**

Lynch asserts his plea was not voluntary because defense counsel told him he had no chance to win at trial and provided false information to Lynch regarding the plea offer: counsel advised Lynch that if he pled guilty he could avoid prison time and that probation was highly probable, when in fact it was highly unlikely. Lynch claims his counsel advised him that the worst case scenario was a "rider." Additionally, Lynch states he was never advised that

4

continuing to assert innocence, after the district court rejected an *Alford* plea, would negatively affect him at sentencing. Lastly, Lynch asserts the poor relationship between him and his attorneys rendered his plea involuntary. The State responds that the carefully conducted colloquy demonstrates Lynch voluntarily entered his plea. Further, Lynch had time to consult with his counsel, assured the court he wished to proceed numerous times throughout the colloquy, and asked questions of the court to clarify his understanding where necessary before continuing to proceed.

Validity of a plea depends on whether the defendant entered the plea voluntarily, knowingly, and intelligently. *Dopp*, 124 Idaho at 483, 861 P.2d at 53; *State v. Rose*, 122 Idaho 555, 558, 835 P.2d 1366, 1369 (Ct. App. 1992). A plea will not be valid unless the record, on the whole, indicates that the defendant: (1) understood the nature of the charges and was not coerced; (2) knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) understood the consequences of pleading guilty. *See* I.C.R. 11(c); *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). A prima facie showing of compliance with these due process requirements is made when the minimum requirements of Idaho Criminal Rule 11(c) have been met. *Detweiler*, 115 Idaho at 446, 767 P.2d at 289. Thereafter, the defendant "has the burden of persuasion to demonstrate a manifest injustice by establishing that the plea was induced by misapprehension, inadvertence, or ignorance." *Id.*

The record demonstrates Lynch had a full understanding of his rights, the nature of the offense, the possible punishments, and the consequences of the plea. At the pretrial conference hearing, the judge relayed to Lynch that he would not accept an *Alford* plea. With that understanding, Lynch continued with the proceeding. The district court took care to ensure that Lynch understood the amended information, allowing him a recess with counsel to discuss some of the changes contained therein. After being satisfied that Lynch understood the charges, the district court went over the rights waived as the result of a guilty plea and set forth the possible sentence and other consequences, including required registration as a sex offender and possible restitution to the victims, among others. The district court covered the plea agreement in detail, noting again the charges in the amended information, that there was no recommendation for a sentence, and that a psychosexual evaluation, polygraph, and presentence investigation (PSI)

5

would be conducted as contemplated in the statutes. In regards to whether Lynch was voluntarily entering the plea, the district court conducted the following line of questioning:

> [Court]: Do you agree with this plea agreement, meaning is it satisfactory to you?
> [Lynch]: Yes, it is.
> [Court]: Has anyone pressured you in any way to take this agreement?
> [Lynch]: No, they have not.
> [Court]: Has anyone told you or assured you that you are going to receive any particular sentence or probation?
> [Lynch]: Absolutely not.
> . . . .
> [Court]: Has anyone made any promises to you about anything?
> [Lynch]: They have not, sir.
> [Court]: Has anyone told you what you must say here today in order for this court to accept your plea?
> [Lynch]: No.
> [Court]: Are your words your own words.
> [Lynch]: My words are my own words.
> [Court]: Anyone kept you from saying anything you want to say?
> [Lynch]: No.
> [Court]: Has anyone pressured you, threatened you, or coerced you in any way into entering these pleas?
> [Lynch]: They have not.
> [Court]: Are these intended pleas of your own free will and volition?
> [Lynch]: Yes, they are. .

After Lynch took a second recess with his counsel, and before finishing the colloquy, the district court again asked Lynch how he wanted to proceed:

> [Court]: Well, I want to be absolutely crystal clear on something. You understand that today is July 28; Monday, August 3rd, we have a jury coming to try the lawsuit.
>           Do you understand that?
> [Lynch]: I understand that.
> [Court]: You have a choice. You as an individual need to make the decision about whether or not you want to plead guilty or go to a trial.
>           Do you understand?
> [Lynch]: I understand.
> [Court]: Okay, what--which of those two choices do you want to make?
> [Lynch]: I'm going to plead guilty.

From the record, this Court is satisfied that the requirements of Idaho Criminal Rule 11(c) were met. Having determined there is a prima facie showing that the plea was voluntary, knowing, and intelligent, we look at whether the record supports the district court's conclusion that Lynch failed to meet his burden of persuasion to demonstrate that the plea was induced by

6

misapprehension, inadvertence, or ignorance based upon the alleged ineffective assistance of counsel. "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted).

Lynch's assertions, that defense counsel's ineffective assistance rendered his plea involuntary, primarily relate to issues regarding sentencing.[5] It is well settled that counsel's good faith predictions as to the likely sentence to be imposed, although inaccurate, do not render a guilty plea involuntary. *Davidson v. State*, 92 Idaho 104, 105, 437 P.2d 620, 621 (1968); *Bjorklund v. State*, 130 Idaho 373, 376, 941 P.2d 345, 348 (Ct. App. 1997); *see also Russell v. State*, 105 Idaho 497, 670 P.2d 904 (Ct. App. 1983).[6] In *Davidson*, the defendant argued that counsel's estimation of a significantly lesser sentence caused his plea to be coerced. In rejecting that argument, the Idaho Supreme Court stated, "Advice from counsel, without more, . . . is not such overbearing force as to constitute coercion." *Davidson*, 92 Idaho at 106, 437 P.2d at 622.

Moreover, this Court, in *Bjorklund*, encountered and rejected an argument nearly identical to that which Lynch now makes. There, Bjorklund alleged his guilty plea to lewd and lascivious conduct was rendered involuntary because of misrepresentations and promises of his counsel that he would be ordered to participate in the "rider" program where he would be evaluated as a possible candidate for probation. *Bjorklund*, 130 Idaho at 376, 941 P.2d at 348. Bjorklund also alleged his counsel told him he would be given a lighter sentence if he pled guilty, among other assurances. He asserted that had he known of the inaccuracies of counsel's advice, he would not have entered a guilty plea. *Id.* We concluded defense counsel's good-faith advice regarding sentencing, even where it ultimately proved inaccurate, did not render Bjorklund's plea involuntary. *Id.* Additionally, the record contradicted Bjorklund's assertions because the district court, in accepting Bjorklund's plea, had specifically asked whether

---

[5] Other arguments Lynch raises regarding ineffective assistance of counsel are more fully addressed below.

[6] Federal cases are also settled on the issue holding, "An erroneous sentence estimate by defense counsel does not render a plea involuntary." *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970); *United States v. Warden*, 408 F.2d 1326, 1330 (4th Cir. 1969).

probation or any other leniency was promised in exchange for the plea, to which Bjorklund responded it was not. *Id.* at 376-77, 941 P.2d at 348-49.

Of course, counsel's advice, even if later proven inaccurate, must be given in good faith. *Davidson*, 92 Idaho at 105, 437 P.2d at 621; *Bjorklund*, 130 Idaho at 376, 941 P.2d at 348. The court will presume that counsel acted in good faith unless there is an affirmative showing to the contrary. *Davidson*, 92 Idaho at 105, 437 P.2d at 621. Where a defendant argues that counsel's advice was given in bad faith to support a motion to withdraw a guilty plea, the credibility and weight of the defendant's assertions are matters for the trial court to decide. *See Hanslovan*, 147 Idaho at 537, 211 P.3d at 782.

We conclude Lynch's plea of guilt was not rendered involuntary based on defense counsel's assertion that probation was a possible sentence or that Lynch would receive a lesser sentence by pleading guilty. Lynch's assertion that probation was nearly a promise is contradicted by the plea colloquy, noted above. The district court asked, "Has anyone told you or assured you that you are going to receive any particular sentence or probation?" Lynch responded, "Absolutely not."[7] He also denied that anyone had made him promises regarding any aspect of the case. Counsel's projection that Lynch may receive probation also did not fall outside the reasonable range of competence expected from attorneys: The district court specifically found "it was not unreasonable for counsel to believe that given [Lynch]'s age, health, and lack of a criminal record that the defendant would have a reasonable opportunity for probation provided he acknowledged his responsibility and was found to be amenable to treatment in the community." Although later proved inaccurate, defense counsel's advice that Lynch may receive probation by pleading guilty did not render Lynch's plea involuntary. As the district court found, nothing in the record supports the assertion of bad faith or coercion.

Still, in making his argument in support of finding his plea involuntary, Lynch relies on *Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986) and *United States v. Davis*, 428 F.3d 802 (9th Cir. 2005). In *Iaea*, on a petition for writ of habeas corpus, the defendant argued he received ineffective assistance of counsel and that his guilty plea was involuntary because counsel advised that probation was a possibility and threatened to withdraw from the case if Iaea did not plead

---

[7] The district court also specifically addressed the fact that the plea agreement included an open recommendation for sentencing and that both the State and Lynch were free to argue for whatever sentence they thought appropriate.

guilty. The court found that counsel has a duty to supply criminal defendants with necessary and accurate information, including information relating to sentencing, because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney." *Iaea*, 800 F.2d at 865 (quoting *Brady v. United States*, 397 U.S. 742, 748 n.6 (1970)). The Ninth Circuit relied on this duty in finding ineffective assistance of counsel, not whether the plea at issue was involuntary. Rather, when discussing the involuntariness of the plea due to coercion by counsel, the Ninth Circuit stated, "Mere advice or strong urging by third parties to plead guilty based on the strength of the state's case does not constitute undue coercion." *Id*. at 867. In that case, defense counsel had gone beyond urging the defendant to plead guilty and threatened to withdraw if the defendant insisted on going to trial. The Ninth Circuit remanded for factual findings as to whether that threat rendered the plea involuntary. *Id.* at 867-68. As there is no such threat alleged in this case, we find *Iaea*, on the issue of coercion to enter a plea, is not analogous.

In *Davis*, the defendant made a motion to withdraw a guilty plea prior to sentencing based on the fact that counsel had "grossly mischaracterized" the possible resulting sentence. *Davis*, 428 F.3d at 805. The Ninth Circuit nowhere found that the mischaracterization of a possible sentence rendered the plea involuntary. Rather, the appellate court reversed the district court because it had applied the wrong standard on a motion to withdraw a guilty plea *prior* to sentencing. *Id*. at 806. The district court determined it could only grant the motion if the defendant could show his plea was invalid, i.e. coerced or otherwise unconstitutionally elicited, which the defendant did not prove. The Ninth Circuit stated that prior to sentencing, the district court had discretion to grant the motion without such a finding to allow the defendant to withdraw his plea if it found that "counsel's gross mischaracterization plausibly *could* have motivated his decision to plead guilty." *Id*. at 808. In other words, gross mischaracterization of a possible sentence could present a fair and just reason to withdraw a guilty plea *prior to sentencing*. Additionally, the "gross mischaracterization" was such because the defendant was subject to federal sentencing guidelines, and for the crime charged there was little possibility, if any, that the defendant would be sentenced to probation, or anything close to probation, under those guidelines. *Id.* at 805. Unlike Davis, Lynch made his motion after sentencing and did not receive a gross mischaracterization of possible sentencing.

9

We also conclude Lynch's plea was not rendered involuntary because defense counsel allegedly failed to advise him that maintaining his innocence would negatively affect him during sentencing. This issue arises after the entry of the plea and could only impact Lynch's decision to enter a guilty plea to the extent he understood he could plead guilty and maintain his innocence, as in an *Alford* plea. However, Lynch was advised by the district court that it would not accept such a plea and Lynch decided to proceed anyway. Lynch does not argue he misunderstood that the district court would require an unequivocal admission of guilt. In fact, the district court did not move forward with the plea colloquy until Lynch admitted he was guilty of the conduct:

[The Court]: Are you satisfied in your mind that you're guilty of each of [the] offenses?

[Lynch]: I--I committed the acts I said I did. If that makes me guilty, I'm guilty.

[The Court]: Are you satisfied that you're guilty, or do you want a jury trial?

[Lynch]: Yes, I'm satisfied that I--that I apparently crossed the line there.

[The Court]: Well, are you satisfied that you're guilty or not?

[Lynch]: Yes, I am.

This makes clear that Lynch was not maintaining his innocence by proceeding.

Finally, the allegedly poor relationship between Lynch and his attorneys did not amount to coercion to enter a plea. Lynch argues that his attorneys, by taking a flat fee for the case, were motivated to convince Lynch to plead guilty. He asserts they threatened to require him to make additional payments to counsel or they would not work on the case. Lynch also cites a grave lack of communication between him and his attorneys and a breakdown in the relationship. In this particular case, the alleged "threats" to require payment of additional attorney fees did not occur until after Lynch had pled guilty. In the one letter provided in evidence that Lynch received prior to pleading guilty, we find no undue pressure to make payments. Instead, the letter indicates that payment was requested according to the flat fee arrangement and was needed to "keep [the] litigation properly financed" so that the attorneys could attempt to secure the best possible outcome for Lynch. The letters that we find contain questionable language from Lynch's counsel were sent after Lynch's guilty plea and have no bearing on Lynch's state of mind prior to entering the plea.

Further, the supposed lack of communication between Lynch and his attorneys and their strained relationship do not render the plea involuntary. *See State v. Nath*, 141 Idaho 584, 586-87, 114 P.3d 142, 144-45 (Ct. App. 2005) (failing to see how a strained relationship with the

10

district court would have coerced a guilty plea). Lynch took the opportunities given at the plea colloquy to communicate with his attorneys and contemporaneously testified that he was satisfied with counsel. The testimony of Lynch's attorneys also contradicts the assertions later made by Lynch of coercion and poor communication. Defense counsel asserted they were in constant communication with Lynch, stating it "would be odd if two or three days went by without speaking to Mr. Lynch" and Lynch changed his mind on several occasions about whether or not to plead guilty.[8] Both Lynch's testimony and the testimony of his counsel are inconsistent to a certain extent. However, the trial court found Lynch failed to establish coercion to enter the plea. The record, as a whole, supports this conclusion.

## B. The Burden to Establish a Manifest Injustice

Where a defendant has entered a voluntary plea, the decision to grant or deny a motion to withdraw a guilty plea lies in the discretion of the district court. *Freeman*, 110 Idaho at 121, 714 P.2d at 90. Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion, as distinguished from arbitrary action. *Id.* This is done by looking at whether the lower court (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The ability to withdraw a plea is not an automatic right; the burden rests on the defendant to demonstrate a justification for withdrawing his guilty plea. *State v. Acevedo*, 131 Idaho 513, 516, 960 P.2d 196, 199 (Ct. App. 1998). When the motion is made after sentencing, Idaho Criminal Rule 33(c) provides that a plea may be withdrawn only to correct manifest injustice. The stricter standard after sentencing is justified to ensure that the accused is not encouraged to plead guilty to test the weight of potential punishment and withdraw the plea if the sentence was unexpectedly severe. *Freeman*, 110 Idaho at 121, 714 P.2d at 90. Accordingly, in cases

---

[8]    In fact, Lynch changed his mind even after entering the plea but before sentencing. Before sentencing, defense counsel testified that he learned Lynch believed he had been coerced into pleading guilty and immediately contacted Lynch. Counsel testified that Lynch admitted he was not forced into pleading guilty, but felt he was in an untenable situation where the attorneys were recommending accepting a plea or risk being convicted on numerous charges--a situation Lynch apparently called a "difficult pinch." Counsel offered to file a motion to withdraw the plea; however, Lynch directed Counsel to not file such a motion.

involving a motion to withdraw a plea after sentencing, appellate review is limited to reviewing the record and determining whether the trial court abused its sound discretion in determining that no manifest injustice would occur if the defendant was prohibited from withdrawing his or her plea. *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992).

Lynch asserts he pled guilty solely because of defense counsel's ineffective assistance. He argues that he need only show that counsel's conduct fell outside the range of reasonable professional assistance and that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. The State argues Lynch must show that counsel's assistance fell outside the acceptable range, and that, but for counsel's errors, there was a reasonable probability that he would have succeeded at trial. The State argues Lynch has failed to meet either prong of this standard.

Neither Lynch nor the State dispute that in order to prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). However, Lynch and the State disagree as to what Lynch must prove in order to establish prejudice. In claims of ineffective assistance of counsel that relate to issues surrounding the plea agreement itself (such as reservation of rights), to establish prejudice a defendant only needs to show that, but for the attorney's deficient performance, the defendant would not have plead guilty and would have insisted on going to trial. *McKeeth v. State*, 140 Idaho 847, 852, 103 P.3d 460, 465 (2004) (citing *Hill*, 474 U.S. at 59). On the other hand, in claims that directly relate to issues that would be raised at trial, the court is free to consider whether there was a reasonable probability the defendant would have prevailed on the issues in determining whether prejudice is established. *McKeeth*, 140 Idaho at 582, 103 P.3d at 465. Whether a defendant would have prevailed on the issue is "a *factor* a court may use when determining the plausibility of the defendant's claim that those errors played a significant role in the decision to plead guilty." *Id.* In *Hill*, the United States Supreme Court noted, "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Hill*, 474

12

U.S. at 59. As challenges to trial convictions involve looking at whether the outcome would have been different were it not for counsel's errors, *see Strickland*, 466 U.S. at 687, in looking at Lynch's guilty plea, we too may consider whether Lynch would have prevailed on the issues he claims caused him prejudice.

Additionally, this Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994). When a motion to withdraw a guilty plea is based on ineffective assistance of counsel, we review the trial court's factual findings that counsel was or was not ineffective to determine if such findings are clearly erroneous. *State v. Wood*, 132 Idaho 88, 96, 967 P.2d 702, 710 (1998).

Lynch argues that defense counsel's performance fell below the level of reasonable professional assistance because of counsel's failure to: (1) move to dismiss the complaint on due process grounds for delay in prosecuting the charges; (2) move to suppress Lynch's 2008 statement that was unlawfully obtained; and (3) investigate the 1997 allegations. Lynch argues that individually and cumulatively the omissions by his counsel constitute a manifest injustice and, but for those errors, he would not have plead guilty.

### 1. Pre-accusatory delay

Lynch argues defense counsel was ineffective because they did not move to dismiss on due process grounds for the State's delay in prosecuting the charges. The State responds Lynch failed to meet his burden because such a motion would not have been granted. In considering this claim, we may consider the probability of success of the motion in question in determining whether the attorneys' decision against filing the motion met objective standards of competence. *See Woodward v. State,* 142 Idaho 98, 103, 123 P.3d 1254, 1259 (Ct. App. 2005).

Bringing a criminal action within the statute of limitations for the offense is the primary guarantee against due process violations based on pre-accusatory delay. *State v. Kruse*, 100 Idaho 877, 878, 606 P.2d 981, 982 (1980) (citing *United States v. Marion*, 404 U.S. 307, 322 (1971)). However, on a charge that has no statute of limitations, including lewd conduct or sexual abuse of a child under sixteen, I.C. § 19-401, other factors must be considered. Before a due process violation can be found as to pre-accusatory delay, a defendant must show (1) such delay caused substantial prejudice to the defendant's right to a fair trial and (2) the delay was an

intentional device to gain tactical advantage over the accused. *Kruse*, 100 Idaho at 878, 606 P.2d at 982. In terms of substantially prejudicing the defendant's right to a fair trial, a violation can occur if dismissal and re-filing of criminal complaints was done for the purpose of harassment, delay, or forum-shopping. *State v. Bacon*, 117 Idaho 679, 683, 791 P.2d 429, 433 (1990).

Lynch argues he was substantially prejudiced because the delay caused a loss of evidence. He asserts witnesses, intended to be called to testify in the 1997 case, are now unable to be found and another witness has since died. Lynch also claims the State gained tactical advantages because the delay allowed for the development of 404(b) prior bad act evidence and the addition of two charges to the information. Finally, he claims prejudice because his bond requirement was higher in the re-filed case and, because he could not meet the bond requirement, the State gained another witness, a cellmate and jailhouse informant, to testify against Lynch. Lynch asserts that had defense counsel filed a motion to dismiss for pre-accusatory delay, it would have been a complete defense to the charges.

To establish prejudice from pre-accusatory delay, a defendant must show actual and definite prejudice rather than speculative harm. *State v. Buchard*, 123 Idaho 382, 386, 848 P.2d 440, 444 (Ct. App. 1993). The defendant must also show the prejudicial effect on his ability to present a defense. *State v. Averett*, 142 Idaho 879, 885, 136 P.3d 350, 356 (Ct. App. 2006). Unavailability of witnesses and loss of evidence as a result of pre-accusatory delay may cause such prejudice. *See Marion*, 404 U.S. at 325-26; *State v. Wilbanks*, 95 Idaho 346, 351, 509 P.2d 331, 336 (1973); *Buchard*, 123 Idaho at 386, 848 P.2d at 444.

Lynch has failed to show actual prejudice by the delay in prosecuting the charges at issue in this case. Although a loss of evidence can constitute prejudice, Lynch does not assert who the witnesses are, now unable to be located or deceased, or to what those witnesses would have testified. Lynch provided defense counsel in the 2008 case with a list of character witnesses. He does not assert in any specific way that the unavailable witnesses from the 1997 case would have added any evidence or testimony to the case in addition to those potential character witnesses. Lynch also fails to point to how the use of 404(b) evidence against him violated due process. The State did develop 404(b) evidence for use in the second case. However, most of that evidence was regarding acts by the defendant which occurred prior to the charges in 1997 and Lynch has not established that the continuing investigation of charges caused *substantial* and actual prejudice to him in the 2008 prosecution. *See United States v. Lovasco*, 431 U.S. 783,

790-91 (1977) (prosecuting a defendant following investigative delay does not deprive him of due process, even if his defense may be somewhat prejudiced by a lapse of time). As to the additional charges brought in 2008, any further investigation may result in additional or new charges. *See Averett*, 142 Idaho at 885, 136 P.3d at 356 ("[N]ew evidence constitutes a sufficient basis to dismiss and re-file charges."). Finally, Lynch has failed to establish prejudice by the State's additional witness, the cellmate, gained as a result of Lynch's incarceration during the 2008 case due to the higher bond requirement. Lynch made statements, similar in nature to those made to the cellmate, on other occasions to various individuals. Statements made by Lynch in 1997, nearly identical to those Lynch made to the cellmate, were permitted by the district court to be used in trial against Lynch when the court denied Lynch's motion to suppress based on illegal seizure.

In addition to the cause of prejudice, a court must consider the reasons for the delay. *Lovasco*, 431 U.S. at 790. Even if we were to assume that Lynch established actual prejudice, nothing in the record establishes that the delay in prosecuting the charges was a deliberate act by the State to harass, delay, or forum shop. The prosecutor from the original case in 1997 testified that the charges were dismissed because of a lack of corroborating evidence. Delay for investigatory purposes does not, by itself, demonstrate intentional acts by the State to deprive Lynch of due process. Considering the probability of success on the motion as a factor and the other circumstances surrounding the re-filed case contained within the record, the district court's finding that defense counsel's failure to file a motion to dismiss for pre-accusatory delay does not constitute ineffective assistance of counsel, is not clearly erroneous.

## 2. Statements obtained in 2008

Lynch argues the incriminating statements made after Lynch's 2008 arrest were unlawfully obtained because the arrest itself violated Lynch's constitutional rights. Lynch was arrested without a warrant in the yard outside of his home. He claims that the arresting officer lacked probable cause and that the arrest in the curtilage of his home required a warrant.

Both the State and Lynch put forward arguments as to whether the arrest was legal.[9] However, we need not review the potential merits of this issue because in determining whether the failure to file a motion constitutes ineffective assistance of counsel, Lynch must show not

---

[9]     The district court also analyzed in detail the merits of the potential motion to suppress, looking at whether the arrest was constitutional, and concluded that the arrest was valid.

only that counsel's assistance was deficient, but also that he was prejudiced by the deficiency. Regardless of whether Lynch would have prevailed on a motion to suppress the statements he made after his 2008 arrest, Lynch cannot establish prejudice. The statements Lynch made upon his arrest in 2008 were nearly identical in nature and kind to both the written and oral statements Lynch made in 1997. In his motion to suppress based on illegal seizure, Lynch argued his statements from 1997 were inadmissible. The district court denied the motion, allowing those statements to be used as evidence in the case. Like the similar statements made to the cellmate, the possible use of extraneous statements made after his 2008 arrest and counsel's failure to move to suppress them does not establish prejudice under the second prong of the *Strickland* test. The district court did not err in concluding Lynch failed to meet his burden.

### 3.     Failure to investigate the 1997 report

Lynch argues ineffective assistance of defense counsel in the 2008 case based on a failure to investigate the 1997 case. Lynch asserts that prior counsel in the 1997 case had developed testimony from five potential witnesses, which would have been favorable to Lynch. He claims defense counsel in the 2008 case failed to contact any of these witnesses. Lynch also argues defense counsel was deficient because they failed to challenge the statements made by alleged victims in 1997, failed to consult experts about the reliability of such evidence, and did not interview witnesses who would challenge the testimony of the alleged victims. Lastly, Lynch asserts defense counsel failed to investigate rebuttal evidence regarding the admission of 404(b) evidence presented in the State's motion in limine. The State responds that the potential witnesses from the 1997 case are never identified and it is nowhere stated to what they would testify or how they could help rebut the allegations in the 404(b) evidence. The State asserts there could not be any witnesses to rebut the allegations because the defendant at all times admitted the conduct that resulted in the charges against him.

Defense counsel has a duty to make a reasonable investigation of the law and facts relevant to a defense. *Stickland,* 466 U.S. at 690-91. Counsel may also "make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. A court, reviewing a challenge to counsel's ineffectiveness, must assess whether counsel's decisions were reasonable while giving a "heavy measure of deference to counsel's judgments." *Id.* The duty of counsel is not such that every potential witness must be interviewed because that would needlessly restrict their judgment as to which witnesses need to be interviewed and when. *Milburn v. State*, 130

16

Idaho 649, 654, 946 P.2d 71, 76 (Ct. App. 1997). Decisions to interview witnesses must be judged according to the significance of the evidence the witness has to offer and what other sources are available to gain that evidence. *Id.* For example, in *Milburn*, the defendant was convicted after a jury trial of second degree murder, but maintained his innocence throughout the proceedings. The State based the prosecution on three primary components: (1) evidence that Milburn was the last person to see the victim; (2) ballistics tests that identified Milburn's handgun as the murder weapon; and (3) testimony that Milburn had told an acquaintance that he had killed someone. *Id.* at 653. Defense counsel did not present any evidence at the close of the prosecution's case, but rather proceeded with a defense solely on cross-examining the State's witnesses. In his post-conviction action Milburn presented evidence that defense counsel had failed to interview potential witnesses that would have contradicted the State's theory that Milburn was the last person to see the victim. Other witnesses could have impeached the acquaintance to whom Milburn allegedly confessed. We held that this evidence of counsel's failure to interview the witnesses was sufficient to raise genuine factual issues as to whether Milburn received ineffective assistance of counsel, which precluded summary dismissal of his post-conviction claims. *Id.* at 654-55.

In light of the deference given to defense counsel to exercise reasonable judgment as to what witnesses should be interviewed and when, we conclude that the district court was not clearly erroneous in finding Lynch did not establish deficiency on the part of defense counsel. Lynch admitted to the conduct that was the basis for the charges, maintaining only that he lacked the requisite intent. However, at least six 404(b) witnesses' testimony would have been allowed at trial to establish intent, absence of mistake, and common scheme or plan regarding the alleged sexual misconduct against several victims by the defendant spanning a range of over twenty years. When considering Lynch's admissions and the 404(b) evidence, it was not unreasonable for defense counsel to focus on the inconsistencies in witness testimony rather than interviewing potential witnesses. The district court did not err in finding that Lynch failed to establish deficiency by counsel.

## IV.

## CONCLUSION

We conclude the record as a whole supports the district court's finding that Lynch's plea was voluntary, knowing, and intelligent. We also conclude the district court did not abuse its

discretion in denying Lynch's motion to withdraw his guilty plea after sentencing because Lynch failed to meet his burden of establishing a manifest injustice. Accordingly, we affirm Lynch's judgment of conviction for two counts of sexual abuse of a child under the age of sixteen years.

Judge LANSING and Judge MELANSON **CONCUR.**